Frank CHAVEZ, Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND COMPANY, a New York Corporation, Defendant-Appellee.

Rolando Garza ZARATE, Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND COMPANY, a New York Corporation, Defendant-Appellee.

Nos. 74-1706, 74-1707.

United States Court of Appeals, Tenth Circuit.

Argued May 22, 1975.

Decided Nov. 21, 1975.

Rehearing Denied Jan. 7, 1976.

---

Gary F. Duckworth of Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, Okl., for plaintiffs-appellants.

Terry W. Tippens and Rand R. Guffey of Fellers, Snider, Baggett, Blankenship & Bailey, Oklahoma City, Okl., for defendant-appellee Sears, Roebuck & Co.

Before LEWIS, Chief Judge, and SETH and HOLLOWAY, Circuit Judges.

LEWIS, Chief Judge.

In January 1973, appellants Frank Chavez and Rolando Zarate were arrested by the Oklahoma City police on a report by an investigator for Sears, Roebuck and Company that several sewing machines and cabinets had been illegally

removed from Sears loading dock. The criminal charges were eventually dismissed and both Chavez and Zarate filed separate civil actions against Sears in state court, alleging negligence, malicious prosecution, false arrest, and slander. Upon petition by Sears, both cases were removed to the Western District of Oklahoma, where they were consolidated and tried by a jury. The jury awarded $1,200 to Chavez and $2,000 to Zarate in actual damages. Chavez and Zarate both filed notices of appeal which were, by stipulation, consolidated for the purpose of this appeal.

Chavez and Zarate went to the Sears warehouse to pick up a gas range purchased earlier that day by Mrs. Chavez. Chavez gave his receipt to someone at the warehouse and was instructed to wait at the loading dock for the range. Two forklifts appeared at the loading dock, one loaded with a large box containing the range and the other carrying four smaller boxes containing sewing machines and sewing machine cabinets. It is at this point the two parties disagree as to what transpired. Chavez testified that the Sears employee on the forklift carrying the sewing machines asked if the boxes were his, to which Chavez responded, "I don't know, you got the receipt." The Sears employee recalled that he specifically asked if the sewing machines were part of Chavez' order and Chavez responded by nodding his head affirmatively.

All of the boxes were loaded into Chavez' pickup and Chavez and Zarate left.

Subsequently, the Sears employees discovered the mistake and called the security officer for Sears, Mr. Hinderliter. Hinderliter interviewed the two dock employees about the incident and then reported to the Oklahoma City police that some property had been illegally removed from the loading dock, giving the police Chavez' address and phone number. The police went to Chavez' home, found the sewing machine and cabinet boxes unopened in the back of the pickup and then arrested both Chavez and Zarate.

The main error alleged by both Chavez and Zarate was the trial court's refusal to instruct the jury on the issue of punitive damages.[1] The refusal of the trial court to instruct on punitive damages was probably prompted either because the proposed instructions erroneously stated Oklahoma law or the district court determined that there was no competent evidence in the record to support an instruction on punitive damages. Whichever was the case, we conclude that the trial court erred in refusing to instruct on the punitive damage issue.

■ Under Oklahoma law, punitive damages are a question for the jury and are only available in actions involving fraud, oppression, gross negligence, or malice. *Pennsylvania Glass Sand Corp. v. Ozment*, Okl., 434 P.2d 893; *Morgan v. Bates*, Okl., 390 P.2d 486; *Spencer v. Arnold*, 152 Okl. 189, 4 P.2d 55; 23 Okl. Stat.Ann. § 9 (1955). The type of malice needed for proving exemplary damages

---

1. Chavez and Zarate's requested instruction on exemplary damages stated in relevant. part that if

the acts done by the defendants were willfully [*sic*] and malicious then . . . you may assess against the defendants by way of punishment for such wrongful acts exemplary or punitive damage in such sum as they may seem proper . . . .. The word "malicious" as used herein does not mean hatred, spite, or ill will as commonly understood, but means a wrongful act intentionally done without just cause or excuse.

Sears' instruction on punitive damages read:
Exemplary damages can only be awarded in a malicious prosecution action if the de-

fendant has been guilty of actual malice. . . . Inferred malice will not support an award of exemplary damages. Exemplary damages can only be supported by a showing of actual malice, and to establish actual malice the act complained of must be actuated by ill will or hatred or be willfully done in a wanton and oppressive manner in conscious disregard of the right of plaintiffs to be secure in their persons, property, and reputation.

On a motion by Sears, the district court rejected this instruction over the objection of Chavez and Zarate.

requires that the action complained of be actuated by ill will or hatred and may be inferred from a willful action in reckless or wanton disregard for the rights of another. *Park v. Security Bank & Trust Co.*, Okl., 512 P.2d 113, 119; *Sunray DX Oil Co. v. Brown,* Okl., 477 P.2d 67, 70. Neither of the requested instructions correctly stated the Oklahoma law on exemplary damages. Contrary to the Chavez instruction, the type of malice needed for exemplary damages does require ill will or hatred. The Sears instruction erred in stating that malice could not be inferred.

■ Since the requested instructions incorrectly stated Oklahoma law on exemplary damages, we must determine whether the district court can, because of the errors in the requested instructions, altogether refuse to instruct on the issue of exemplary damages or whether the court must instead give its own corrected version of the instructions.[2] While a district court may properly refuse to give an erroneous instruction, it is questionable whether it can also refuse to give any instruction on a certain issue merely because the requested instructions incorrectly state the law. Since the trial court bears the ultimate responsibility for properly instructing the jury, we agree with those courts that have ruled that where an instruction would be beneficial to the jury's proper determination of the case, the court may not merely refuse a requested instruction, but instead has a duty to frame the instruction properly and give it to the jury. *Celanese Corp. of America v. Vandalia Warehouse Corp.*, 7 Cir., 424 F.2d 1176, 1181; *Emery v. Northern Pac. R. R.*, 8 Cir., 407 F.2d 109, 112 n. 3; *Southern Ry. v. Elliott*, 6 Cir., 250 F.2d 740, 743.

■ However, before we will charge the trial court with a failure to properly instruct the jury, it must be determined

that there is sufficient evidence in the record to support submission of an instruction to the jury. *Lopez v. Southern Pacific Co.*, 10 Cir., 499 F.2d 767, 772; *Hartman v. Miller Hydro Co.*, 10 Cir., 499 F.2d 191, 193. In the instant case, this means that the court must be satisfied that there is some competent evidence of fraud, oppression, gross negligence, or malice in the record.

To prove that the trial court believed that there was adequate competent evidence to support a jury instruction on punitive damages, we need only turn to the trial court's instruction on malicious prosecution. In this instruction, the district court defined the "malice" element in a malicious prosecution case as follows:

> *Malice.* You are instructed that malice is the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or other circumstances that the law will impute as an evil intent. Malice, as used here, means express malice or malice in fact.

> In this connection you are instructed that the Defendant was actuated by express malice or malice in fact, within the meaning of these instructions, if in speaking the words complained of, the Defendant acted not in good faith but bad faith toward the Plaintiffs, and with an intent to injure the Plaintiffs or in wilful, wanton and reckless neglect and disregard of the rights and interests of the Plaintiffs.

■ In Oklahoma, the proof necessary in malicious prosecution cases to establish malice for actual damages is different from the proof of malice needed to establish punitive damages. *Park v. Security Bank & Trust Co.*, Okl., 512 P.2d 113, 119; *Imo Oil & Gas Co. v. Knox*, 154 Okl. 100, 6 P.2d 1062, 1064. For actual damages, malice is proved sufficiently if

2. In a diversity case such as this, the state law determines the substance of the instructions, but the granting or denial of jury instructions is controlled by federal law and the Federal Rules of Civil Procedure. *Hopkins v. Metcalf*, 10 Cir., 435 F.2d 123, 124.

the known and necessary consequences of an act are injury to the person. *Imo Oil & Gas Co. v. Knox, supra,* at 1064. However, the proof of malice for exemplary damages requires that "the action complained of must be actuated by ill-will or hatred, or wilfully done in a wanton and oppressive manner and in conscious disregard of the other's rights." *Park v. Security Bank & Trust Co., supra,* at 119.

■ The evidence needed in the record to support the district court's instruction on the definition of malice is the same type of evidence that would likewise support instructions on punitive damages. We have difficulty in perceiving why the trial court thought the record would support the former instructions but not the latter.

Furthermore, the case was submitted to the jury on four theories of liability—negligence, false arrest, slander, and malicious prosecution—but the general verdict makes it difficult to determine upon which theory the jury found liability. Such being the case, for purposes of this appeal we can assume that liability was founded on any or all of the theories. If the jury found malicious prosecution using the court's definition of malice, it might also have awarded punitive damages had it been instructed of the availability of punitive damages under the proper facts. Because of the trial court's instructions and the possibility that the jury found liability in this definition of malice, we conclude that the trial court erred in not giving punitive damages instructions and that the case should be remanded for a new trial.

It is so ordered.