2007 UT App 84

**Steven WOODS and Stacey Woods, Plaintiffs and Appellants,**

v.

**Gary R. ZELUFF, M.D.; Gary R. Zeluff, M.D., P.C.; and Utah Orthopaedic Associates, P.C., Defendants and Appellees.**

No. 20050563–CA.

Court of Appeals of Utah.

March 22, 2007.

3. *Black's Law Dictionary* 488 (7th ed.1999).

Ron J. Kramer, Draper, and Matthew H. Raty, Matthew H. Raty PC, Sandy, for Appellants.

Philip R. Fishler and Catherine M. Larson, Strong & Hanni, Salt Lake City, for Appellees.

Before BENCH, P.J., BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 In this medical malpractice action, Plaintiffs Steven and Stacey Woods appeal a jury verdict finding that Defendant Gary R. Zeluff, M.D., did not breach the applicable standard of care in conjunction with an operation on Steven's toe. Plaintiffs argue that the trial court erred by excluding, as unfairly prejudicial, post-operative statements allegedly made by Dr. Zeluff and that such error warrants a new trial. We agree.

## BACKGROUND

¶ 2 Steven Woods was experiencing toe pain and sought treatment from Dr. Zeluff. Without offering more conservative treat-

ments for the pain or referring Steven to a rheumatologist, Dr. Zeluff determined that Steven was a good candidate for MTP-implant surgery.[1] The surgery was unsuccessful, however, requiring additional corrective surgeries and ultimately rendering Steven permanently disabled.

¶ 3 During a post-operative visit, Dr. Zeluff allegedly told Steven, "I jumped the gun," "I've missed something," and "I don't think we should have done this surgery." Plaintiffs subsequently filed a medical malpractice action against Dr. Zeluff and related entities.

¶ 4 Defendants filed a motion in limine requesting that testimony regarding Dr. Zeluff's alleged post-operative statements be excluded at trial. After a hearing on the matter, the trial court granted the motion, refusing to allow the use of such testimony "on the grounds that the testimony is minimally probative and is substantially outweighed by the dangers of unfair prejudice." The case proceeded to trial, and the jury found in favor of Defendants. Plaintiffs now appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Plaintiffs argue that the trial court erred in applying the evidentiary balancing test of rule 403 of the Utah Rules of Evidence. *See* Utah R. Evid. 403 of the Utah Rules of Evidence. "In reviewing a trial court's ruling on the admissibility of evidence under rule 403, we will not overturn the court's determination unless it was an abuse of discretion." *State v. Hamilton,* 827 P.2d 232, 239 (Utah 1992) (internal quotation marks omitted). That is, we decide "whether, as a matter of law, the trial court's decision that 'the unfairly prejudicial potential of the evidence outweighs [or does not outweigh] its probativeness' was beyond the limits of reasonability." *Id.* at 239–40 (quoting *State v. Ramirez,* 817 P.2d 774, 781–82 n. 3 (Utah 1991)) (alteration in original). Moreover, "like any other evidentiary ruling, an erroneous decision to admit or exclude evidence based on rule 403 cannot result in reversible error unless the error is harmful." *Id.* at 240.

1. MTP is an acronym for metatarsophalangeal joints, which are basically the joints connecting

## ANALYSIS

¶ 6 Under the Utah Rules of Evidence, relevant evidence is generally admissible. *See* Utah R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* 401. Under this broad definition, the trial court determined that the statements allegedly made by Dr. Zeluff that he "missed something," "jumped the gun," and "shouldn't have done this surgery" were relevant to the question of Dr. Zeluff's negligence. Under rule 403, however, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* 403. It is the result of this balancing test that the parties dispute on appeal.

¶ 7 We agree with Plaintiffs that testimony regarding Dr. Zeluff's statements should not be excluded under rule 403 because the testimony is not *unfairly* prejudicial. In its determination below, the trial court made several references to the evidence as being "highly prejudicial." Indeed it is. But prejudice alone is not sufficient justification to exclude the evidence. Rather, the balancing test under rule 403 requires measuring the danger of unfair prejudice.

> Since all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered, prejudice which calls for exclusion is given a more specialized meaning: an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror.

*State v. Maurer,* 770 P.2d 981, 984 (Utah 1989) (internal quotation marks and citation omitted). *See United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993) ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate

the toes to the feet. *Webster's Medical Desk Dictionary* 430 (1986).

probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.") (internal quotation marks and citation omitted).[2] Testimony regarding Dr. Zeluff's alleged statements[3] is highly probative because it reveals a medical expert's assessment of his own actions, an assessment that has bearing on the determination of negligence—specifically, on the question of breach of the standard of care. And the statements do not contain information that would likely create feelings of "bias, sympathy, hatred, contempt, retribution or horror" in the fact finder, or information that would otherwise shift the fact finder's attention away from the proper method for resolving the negligence issue, i.e., determining whether Dr. Zeluff's treatment fell below the standard of care. *Maurer*, 770 P.2d at 984 (internal quotation marks and citation omitted). Thus, we see only a remote possibility that the evidence at issue is of the sort that will lead the fact finder to render a decision on an emotional or otherwise improper basis.

¶ 8 Even recognizing this minimal risk of unfair prejudice—for example, the jury might conceivably confuse the doctor's subjective sense of his personal standard of care with the standard of care ordinarily exercised by doctors in similar situations—we readily conclude that exclusion would be improper. "The mere fact that evidence possesses a tendency to suggest a decision upon an improper basis does not require exclusion; evidence may be excluded only if the danger

of unfair prejudice *substantially outweighs* the probative value of the proffered evidence." *Id.* (internal quotation marks and citation omitted) (emphasis added). *See* Utah R. Evid. 403; *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir.1985) ("The exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly.") (internal quotation marks and citation omitted). The balancing scale is further tipped in favor of admission because "we must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Bonds*, 12 F.3d at 567 (internal quotation marks and citation omitted). Thus, because the proffered evidence here had a high probative value and posed no more than a slight risk of *unfair* prejudice, the probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court exceeded the sound exercise of its discretion in excluding the evidence.[4]

¶ 9 Defendants argue that the statements had very little probative value because they were, at most, words of compassion or remorse, and that they would be insufficient to establish that Dr. Zeluff's conduct fell below the standard of care. But Defendants do not point to, nor do we find, any case in which testimony of similar statements by a treating physician was completely withheld from the fact finder. Instead, the cases Defendants discuss in support of their argument only

**2.** Several cases to which we refer are federal cases discussing rule 403 of the Federal Rules of Evidence. This federal rule is identical to the Utah rule, *compare* Fed.R.Evid. 403, *with* Utah R. Evid. 403, and such reference is therefore appropriate. *See State v. Fedorowicz*, 2002 UT 67, ¶ 30 n. 1, 52 P.3d 1194 ("Although the Federal Rules of Evidence are a separate body of law from the Utah Rules of Evidence, if the reasoning of a federal case interpreting or applying a federal evidentiary rule is cogent and logical, we may freely look to that case, absent a Utah case directly on point, when we interpret or apply an analogous Utah evidentiary rule."), *cert. denied*, 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003).

**3.** Defendants argue that Dr. Zeluff's statements "could not reflect Dr. Zeluff's personal opinions or impressions because he strongly contests ever making the statements." This argument is mis-

placed. The question of whether Dr. Zeluff actually made the statements calls for a routine credibility determination, which is completely within the province of the jury, and a simple assertion that the statements were never made does not tip the rule 403 balancing test in favor of exclusion. *See State v. Branch*, 743 P.2d 1187, 1190 (Utah 1987) ("Rule 403 is not to be used to allow the trial judge to substitute his assessment of the credibility of testimony for that of the jury by excluding testimony simply because he does not find it credible."), *cert. denied*, 485 U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988).

**4.** Moreover, an appropriate cautionary instruction would be effective in reducing or eliminating the danger of confusion here. *See* Fed.R.Evid. 403 advisory committee note ("[C]onsideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").

establish that Dr. Zeluff's statements may not *alone* be sufficient to establish negligence.[5] Even assuming Defendants are correct in their assertion that Dr. Zeluff's statements, alone, are insufficient to support a finding of medical negligence, the statements are nonetheless clearly probative, *see Black's Law Dictionary* 579 (7th ed.1999) (defining "probative evidence" as "[e]vidence that *tends* to prove or disprove a point in issue") (emphasis added), and Defendants' assertion does not alter our rule 403 analysis.

¶ 10 Finally, we determine that the trial court's error in excluding testimony regarding Dr. Zeluff's statements was prejudicial to Plaintiffs. Statements by the treating doctor that he "missed something," "jumped the gun," and "shouldn't have done this surgery" tend to reflect a medical expert's assessment of his own care—an assessment which would likely carry considerably more weight than that of medical experts not involved in the patient's treatment. Thus, testimony regarding these alleged statements, if believed, would be central to Plaintiffs' case, and we conclude that absent the erroneous exclusion, "there is a reasonable likelihood of an outcome more favorable to [Plaintiffs]." *State v. Dunn*, 850 P.2d 1201, 1221 (Utah 1993). Because the trial court's error was prejudicial, we must reverse and remand for a new trial.

## CONCLUSION

¶ 11 Testimony regarding the statements allegedly made by Dr. Zeluff was not unfairly prejudicial to such a degree as to substantially outweigh its probative value. Exclusion of such testimony was therefore in error, and this error was prejudicial to Plaintiffs. Accordingly, we reverse and remand for a new trial.[6]

¶ 12 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JUDITH M. BILLINGS, Judge.

---

5. The primary cases discussed by Defendants are *Sutton v. Calhoun*, 593 F.2d 127 (10th Cir.1979); *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972); *Phinney v. Vinson*, 158 Vt. 646, 605 A.2d 849 (1992); and *Senesac v. Associates in Obstetrics & Gynecology*, 141 Vt. 310, 449 A.2d 900 (1982). None of these cases include discussion of rule 403, nor are they focused on whether the defendant doctor's statement should be admitted. Instead, the cases focus on whether such statements—already before the fact finder—are sufficient to establish negligence. *See Sutton*, 593 F.2d at 128 (explaining that an admission of a bona fide mistake of judgment is not sufficient to establish a breach of duty); *Cobbs*, 104 Cal.Rptr. 505, 502 P.2d at 6–7 (determining that the doctor's "equivocal admission" that he "blamed himself" was not a concession that his conduct fell below the standard of care, and it

therefore could not alone support a jury verdict of negligence); *Phinney*, 605 A.2d at 849–50 (affirming that the doctor's apology for an "inadequate resection" was "insufficient by itself to meet plaintiff's burden" of proving medical malpractice); *Senesac*, 449 A.2d at 903 (explaining that the doctor's statement that she "'made a mistake, that she was sorry, and that it had never happened before'" did not alone establish a departure from the applicable standard of care) (alteration omitted).

6. Given our determination of the evidentiary issue and the resulting remand, we need not address Defendants' argument regarding juror bias, since any error in that regard will also be remedied by our remand and the impaneling of a new jury.