## IMO OIL & GAS CO. v. KNOX.

No. 19764. Opinion Filed July 14, 1931.

Rehearing Denied Jan. 12, 1932.

McKeever, Moore & Elam, for plaintiff in error.

Simons, McKnight, Simons & Smith, for defendant in error.

RILEY, J. This action was instituted by Charles E. Knox against the Imo Oil & Gas Company, and based upon malicious prosecution of a civil action. On May 31, 1922, the Empire Gas & Fuel Company owned an oil and gas lease on a quarter section of land in Garfield county. R. E. Hoy owned

the fee. On January 18, 1924, Hoy secured a judgment canceling the lease in part on the ground of nondevelopment. The Empire Company had developed a small producing well on the premises, so the decree of cancellation reserved unto the Empire Company approximately ten acres about the well. The Empire Company assigned to Knox the right to drill additional wells upon the ten-acre tract so reserved. The Imo Oil & Gas Company, on June 7, 1924, purchased an oil and gas lease upon the quarter section of land, exclusive of the ten acres heretofore mentioned, and immediately commenced drilling a well between 30 and 40 feet from the east line of the ten-acre tract. On September 22, 1924, it brought in this well. On March 1, 1925, the Imo Company commenced another well at a location east of their first well, and further development followed. Thereupon Knox commenced operations near the east line of the ten-acre tract and offsetting the Imo Well No. 3, whereupon Mr. Hawkins, president of the Imo Company, consulted a lawyer, and through him brought an action in injunction to restrain the operations of Knox, and alleged in the petition for injunction that the Empire Company had no right to drill any additional wells upon the ten-acre tract, and that it had no right to assign to Knox the right to drill thereon.

A demurrer was presented and by the court sustained on December 14, 1925; the cause was dismissed, the court finding that plaintiff had no right to maintain the action for the reason that it had no right, title, or interest, legal or equitable, in or to the ten-acre tract of land, but that the Empire Company had the right to assign its rights and interest, under its lease as to the ten-acre tract, to defendant Knox. The plaintiff appealed, and the decision of the lower court was sustained on October 19, 1926. Imo O. & G. Co. v. Chas. E. Knox Oil Co., 120 Okla. 13, 250 Pac. 117.

Whereupon Knox instituted the instant action to recover damages by reason of the alleged malicious prosecution. Verdict was in favor of plaintiff in the sum of $8,000 actual damages, and $3,000 punitive damages. Judgment was rendered accordingly.

The evidence disclosed that the Imo Company had located and drilled its well No. 1, at a point 23 feet from the east line of the ten-acre tract and its No. 3 well at a point 33 feet east of the east line of the tract near the southeast corner. No doubt the conclusion below was that the Imo Company so located its wells to drain the oil from the ten-acre tract, and when Knox acquired his right to the ten-acre tract and located his well No. 2, as an offset to the Imo Well No. 3, to protect his interest, that the Imo Company, through Mr. Haskins, president, sought to hinder and did hinder the Knox operations, in the meantime securing the oil to itself by drainage.

When the Imo Company brought its injunction action against Knox, no temporary injunction order was sought for the reason, as explained in the evidence of the attorney for the Imo Company, that an injunction bond would have been required, with the resulting liability in event the court found the order of injunction was wrongfully obtained. So, in lieu of a temporary order of injunction and bond therefor, and yet for the purpose of impounding the value of Knox's oil runs, the Imo Company served notice, by letter, on the Champlin Refining Company, purchaser of oil from Knox, that the Imo Company claimed the oil produced from the ten-acre tract. The Champlin Refining Company refused to pay Knox for such oil unless an indemnifying bond be given it by Knox, and this Knox was unable to do. The result was that Knox was unable to get money with which to properly develop the ten-acre tract, but the Imo Company continued swabbing its well offsetting, as aforesaid, and draining the ten-acre tract.

After Knox brought in well No. 2, he located well No. 3, at a point west and on the south line of his ten-acre tract; the Imo Company offset this well with its No. 6. Knox erected his derrick, but was unable to proceed with drilling his well No. 3 for lack of funds, until the court passed upon the demurrer in the injunction suit, whereupon the Champlin Refining Company resumed payment to Knox for oil runs, enabling Knox to resume drilling on well No. 3. By reason of this delay, he lost production of this well for 30 days to his detriment by drainage and otherwise. It appears, also, that Hawkins, president of the Imo Company, sought to induce the Pepper Gasoline Company to refrain from taking gas from Knox, by threatening to discontinue selling gas from the Imo wells to the Pepper Company in event the Pepper Company dealt with Knox. The result was that Knox did not sell gas produced from the ten-acre tract, but lost the value thereof.

Knox also established that he was forced to pay $700, attorney fee, in defending his interest in the injunction action.

The Imo Company, as plaintiff in error, contends, for reversal of the judgment (under its first assignment or error), that one of the five essential elements, as a condition precedent to recovery in an action for malicious prosecution, is lacking in the case at bar; that that essential element is want of probable cause. Wherefore, they assert, their demurrer to the evidence of Knox should have been sustained; that said alleged error of law occurring at the trial was presented in the motion for new trial, which was by the trial court overruled.

This contention is without merit. The Imo Company had no right to maintain the action in injunction against Knox. It had no interest in the ten-acre tract. It was doubtful itself of its right to maintain the action. It was fearful of its liability in event it gave injunction bond, nevertheless, it became an aggressor, not only in court, but in many other places, always seeking the advantage, and all in connection with the injunction action which was instituted with misgivings on its part as to its right and consequent liability.

".The elements entering into and necessary to be shown in a suit for damages for malicious prosecution are: (1) That the prosecution was commenced against plaintiff; (2) that it was instituted or instigated by defendant; (3) that it was malicious; (4) that it has been legally and finally terminated in plaintiff's favor; (5) that it was without probable cause." Robberson v. Gibson, 62 Okla. 306, 162 Pac. 1120; Sawyer v. Shick, 30 Okla. 353, 120 Pac. 581.

The establishment of the the fourth element, i.e., termination of the initial suit or prosecution in plaintiff's favor, does not establish the fifth element, that suit was without probable cause. However, in the case at bar, we find sufficient evidence to establish the fifth element.

It is contended that the third element or malice was not established by plaintiff. It is urged that:

"To constitute malice, there must be malus animus denoting that the party who instituted the original proceedings was actuated by wrong motives." 38 C. J. 422.

The third element of the action for malicious prosecution, malice, does not necessarily mean "malus animus," i.e., that the action complained of was actuated by ill-will or hatred toward the person prosecuted. It is sufficient if the known and necessary consequence of the act done is injury to that person. By it is meant an unreasonable and wrongful act done intentionally,

without just cause or excuse. Schonwald v. Ragains, 32 Okla. 223, 122 Pac. 203. When it so appears the law will imply malice. However, express malice, i.e., actual ill feeling toward the person injured, may also be proved to exist, and in the cause at bar there was evidence tending to prove express malice. When so established it forms a basis for exemplary damages irrespective of that arising by presumption. Section 5975, C. O. S. 1921.

It is urged that the Imo Company consulted a reputable counsel before bringing the injunction action, and that it relied upon such advice, thus establishing probable cause and absolving itself from malice. Such is not the case. It is true that the Imo Company, by Mr. Hawkins, consulted a reputable attorney, Mr. Glasser, and was advised that, in his opinion, "nobody could develop that ten acres any further because he had had this lease canceled himself. He had the case himself, and had it canceled," and that, in his opinion, "it was left for the protection of this well and not for to develop." .The evidence shows that it was the same attorney who brought the injunctive action for the Imo Company, but it also appears that the same attorney advised the writing of the letter to the Champlin Company in lieu of injunctive bond, thus evincing on the face of the advice given that there was grave danger and probability of liability for damages in event the injunctive suit was brought and unsuccessfully terminated. Moreover, it was established to the satisfaction of the jury that the defendant below, after receiving such advice from its attorney, went further in its correlated activity against Knox than merely instituting the suit. There was evidence tending to show that it oppressed Knox by inducing a prospective purchaser of gas from him not to purchase. Suppose A., having financial or personal trouble with B., consults a lawyer relative to bringing a civil suit or criminal prosecution against B., and is advised that there is a possibility or probability of succeeding in the action, but there is also probability of B.'s success in a counteraction, which may be based upon B.'s damage as a result of the prospective suit. Can it be said that A. establishes probable cause and relieves himself of malice because he consulted a lawyer and received such advice? We think not. Malice, we think, was sufficiently established, not only as arising by inference from want of probable cause, but also by the continued action of defendant below as heretofore stated.

The general rule relative to negativing

the want of probable cause and malice in such actions by a showing of timely advice of legal counsel, upon a full disclosure of relative facts and action in good faith upon such advice, is fully stated in the cases. El Reno Gas & Elec. Co. v. Spurgeon, 30 Okla. 88, 118 Pac. 397; Newell on Malicious Prosecution, 310. But, of course, such defense is dependent, not only upon action within the confines of that advice, but as well upon the advice itself. Such rule as stated presumes advice to the effect that the prospective suitor has a clear, valid, bona fide legal right to institute action, and not to the contrary as appears in this case. See, also, Boby v. Smith, 40 Okla. 280, 138 Pac. 141; Equitable Life Assu. Soc. of U. S. v. Lester (Tex. Civ. App.) 110 S. W. 499; Stalker v. Drake (Kan.) 136 Pac. 912; Jacks v. Stimpson, 13 Ill. (3 Peck.) 701; Munns v. DeNemours, 3 Wash. C. C. 31; Grundy v. Crescent News & Hotel Co., 38 La. Ann. 974; Glascock v. Bridges, 15 La. Ann. 672; Johnston v. Deidesheimer (Colo.) 232 Pac. 1113.

Suppose A. reveals all relative facts to his attorney regarding a contemplated action against B. The attorney advises A. that he believes B. liable, but he also believes that the courts may not so hold, and consequently A. may become liable for prosecution of B., so that in event of a prosecution of B., some ingenious method must be devised or utilized so as to defeat the prospective adversary B. in his countersuit. Query: Is such advice of counsel a defense within the rule? We think not.

Complaint is made concerning instruction No. 10. It is contended that the court should have regarded the question of probable cause as one of law for the court's decision, and not as a mixed question of law and fact for decision by the jury. Under the circumstances, we hold the instruction proper, for one of the issues covered by the instruction is whether the defendant acted in good faith upon the advice of counsel.

Error is predicated on instruction No. 14, relative to exemplary damages. It is contended that the only malice established was that arising by inference from proof of the want of probable cause, and that such character of malice is not a proper basis for punitive damages. Such is the well-established exception to the general rule. 38 C. J. 427. There is no necessity of determining whether or not the exception to the general rule is applicable in this state in view of section 5975, supra, for the exception has

no application to the case at bar, for there was proof tending to show express malice.

Instruction No. 15, bearing upon the same subject, was proper.

It is contended the verdict and judgment is not sustained by sufficient evidence. From our examination of the evidence, we find it sufficient.

Judgment affirmed.

CLARK, V. C. J., and HEFNER, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., dissents from the affirmance of the judgment of exemplary damages. SWINDALL, J., disqualified. CULLISON, J., not participating—having participated below. KORNEGAY, J., dissents.